684 P.2d 1010

**CALDWELL MEMORIAL HOSPITAL,**
**Appellant-Respondent,**

v.

**BOARD OF COUNTY COMMISSION-**
**ERS OF CANYON COUNTY, Idaho,**
**Respondent-Appellant.**

**No. 14630.**

Court of Appeals of Idaho.

July 31, 1984.

**34**

Richard L. Harris, Canyon County Pros. Atty., Charles L. Saari, Deputy County Pros. Atty., Caldwell, for respondent-appellant, Board of County Commissioners of Canyon County.

Dean J. Miller of Gigray, Miller, Downen & Weston, Caldwell, for appellant-respondent, Caldwell Memorial Hospital.

SWANSTROM, Judge.

On the evening of December 1, 1979, Michael Skinner was struck by a car and severely injured. He was taken to Caldwell Memorial Hospital ("Caldwell Memorial") where he remained until his release in February 1980. Skinner had no insurance, no income and no assets. Although he was a veteran and may have been qualified for transfer to the Veterans Administration (VA) Hospital in Boise, officials at Caldwell Memorial did not discover this fact until approximately two weeks before his release. Caldwell Memorial helped Skinner prepare and file an application with the Board of County Commissioners of Canyon County (the "Board") for assistance as a medical indigent. *See* I.C. § 31–3404. While this application was pending, Skinner was discharged from the hospital and he left Idaho for Iowa to live with relatives. The Board denied his application without a hearing, giving "lack of information" as the reason for the denial.

Caldwell Memorial then requested a hearing before the Board on Skinner's application. The Board granted the hearing, taking testimony and other evidence. *See* I.C. § 31–3505. After the hearing, the Board again denied assistance, listing several reasons including Skinner's absence from the hearing which resulted in a failure to explain certain discrepancies in information furnished to the Board about his income and resources. The Board also determined that Skinner was "not medically indigent" and that his claim was not timely filed.

Caldwell Memorial, as a party aggrieved by the Board's decision, appealed to the district court. The district court reversed, holding that the Board had misapplied the statutory definition of medical indigency. The court held that the "record reveals clearly that Mr. Skinner was 'medically indigent.'" The Board has appealed from the district court's order. We reverse.

This appeal raises several issues concerning the Board's findings, and the district court's review of those findings. The dispositive issue, however, is whether an application for payment of medical expenses was timely filed. Our discussion will be limited to this issue.

The Board contends that, even if Skinner was medically indigent, the application required by I.C. § 31–3404 was not timely filed. As noted earlier, this was one of the reasons given by the Board for denying the application. The district court made no ruling on the timeliness issue, but simply reversed the Board, holding that it erred in failing to find Skinner was medically indigent.

Skinner filed his application with the Board on February 6, 1980, sixty-six days after his admission to Caldwell Memorial. Idaho Code § 31–3504 states:

An application for or on behalf of a medically indigent person receiving emergency medical services may be made any time within forty-five (45) days following the admission of said person to the hospital furnishing said care. If a person becomes medically indigent subsequent

to admission to a hospital or subsequent to receiving treatment by a hospital, an application for the person, or on his behalf, shall be made within thirty (30) days of the time the person becomes medically indigent. The chargeable county or counties shall be notified as soon as practicable upon the hospital's obtaining information disclosing that a patient is medically indigent.

This statute encompasses two requirements. First, it sets time limits for filing an application with the board, by or on behalf of a medically indigent person. Second, it requires the hospital to give notice to the chargeable county "as soon as practicable" and as soon as the hospital obtains "information disclosing that a patient is medically indigent."

The language of I.C. § 31–3504 is clear. If a person is medically indigent upon admission to the hospital, that person or someone on his behalf must file an application with the board within forty-five days following his admission. If a person *becomes* medically indigent thereafter, the application must be made within thirty days of his becoming indigent. In addition, the hospital is required to notify the chargeable county when it obtains information disclosing that a patient is indigent. This *notice* requirement does not, however, extend the time given hospitals for filing an *application*. It simply directs that notice be given to the county as soon as is practicable. A hospital, of course, can be the applicant. I.C. § 31–3408. In such circumstances, the hospital is bound by the same forty-five and thirty-day time limits.

We therefore reject the suggestion that the thirty-day time limit begins to run when the person making the application "should have, or reasonably could have, discovered the indigency." Such an interpretation is not consistent with the plain language of the statute. "The plain, obvious and rational meaning is always pre-

ferred to any hidden, narrow or irrational meaning." *State ex rel. Evans v. Click*, 102 Idaho 443, 448, 631 P.2d 614, 619 (1981), *cert. denied*, 457 U.S. 1116, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982). If the legislature wanted to establish a "reasonable diligence" standard, it could have done so. .*Compare* I.C. § 6–905 (in tort actions against the state, claims must be filed "within one hundred twenty (120) days from the date the claim arose or *reasonably should have been discovered*, whichever is later"). We recognize that the legislature has placed a duty on hospitals to "make all reasonable efforts to determine liability for the account." I.C. § 31–3509. This, however, does not make the time limits of I.C. § 31–3504 onerous. It would be a rare case in which a hospital, making "all reasonable effort," would fail to determine liability for payment within forty-five days of the patient's admission in order to make a timely application under I.C. § 31–3408.

The written decision of the Board denying the application found that Skinner was not "medically indigent."[1] We need not review that finding because it does not affect our result in this appeal. If the Board's finding were correct, the hospital could not recover. Conversely, if the finding were incorrect—as the district court ruled—the hospital still could not recover because, as we now explain, the application was untimely filed. For the sake of the discussion below, we assume that Skinner was "medically indigent."

The evidence clearly shows that if Skinner was medically indigent, that status existed at the time he was admitted to the hospital. He was then unemployed. He had no assets and no income. He had no medical insurance or resources available to him at that time for payment of the emergency medical treatment provided by the hospital. The vehicle which struck Skinner was insured, but the only evidence in the

---

1. Idaho Code § 31–3502(1) provides in part:
     "Medically indigent" means any person who is in need of hospitalization and who, if an adult, together with his or her spouse, or whose parents or guardian if a minor, does

not have income and other resources available to him from whatever source which shall be sufficient to enable the person to pay for necessary medical services.

record regarding this possible source of payment showed that the driver was not at fault and that the insurer would not recognize any responsibility to Skinner under its policy. Likewise, the Board's suggestion that there were benefits available to Skinner through the Social Security Administration was not supported by any evidence.

The only other possible "resource" available to Skinner was the *possibility* that at some point *during* his hospitalization he could have been transferred to the VA Hospital in Boise. If such a transfer could have been arranged, presumably there would have been no further cost to Skinner or to Caldwell Memorial after the transfer. The VA Hospital was not, however, an available resource at the time of Skinner's admission to Caldwell Memorial. Even if those who responded to the emergency had known that Skinner was a veteran who was eligible for treatment at the VA Hospital, there is no indication in the record that he would have been taken initially to the VA Hospital. His injuries were serious and the accident occurred in the City of Caldwell. He was simply taken to the nearest hospital.[2]

We hold that under the provisions of I.C. § 31–3504, Skinner, or Caldwell Memorial, had forty-five days following admission of Skinner to the hospital in which to file a claim with the Board for payment of Skinner's costs of hospitalization. Because the claim was not filed within the time period allowed, we conclude the Board was correct in rejecting payment of the claim. Accordingly, we reverse the order of the district court dated April 16, 1982, so far as it relates to the claim of Caldwell Memorial.

Costs to the Board. No attorney fees awarded on appeal.

WALTERS, C.J., and BURNETT, J., concur.

**2.** By the foregoing discussion we do not mean to hold that it is the hospital's responsibility of its own initiative, to transfer a patient to another medical facility where treatment may be less expensive or may be provided without cost. We do not decide that issue here. We simply note that I.C. § 31–3504 requires the hospital to notify the "chargeable county or counties ... as soon as practicable upon the hospital's obtaining information disclosing that a patient is medically indigent." Section 31–3507 provides:

A county to which notice has been given pursuant to section 31–3504, Idaho Code, of a medically indigent person shall have the right

to have said person removed to a hospital designated by the board of such county, if hospitalization is being provided elsewhere, if the attending physician certifies that removal of such person would not be injurious. The hospital from which a person is removed as herein provided shall not be liable in any manner whatsoever for any consequence of such removal.

This latter section authorizes the county to transfer a medically indigent patient. Here, however, there is nothing in the record to show that Caldwell Memorial ever gave the Board the notice required by § 31–3504.